LAND, J.
Plaintiff alleges that he is the co-owner with the defendants, Frank Básele, Joseph A. Básele, and Mrs. Iola Básele Young, of a certain lot or parcel of ground in the parish of Terrebonne, in the follow-' ing proportions: Plaintiff an undivided one-fifth, Frank Básele two-fifths, Joseph A. Básele one-fifth, and Mrs. Iola Básele Young, wife of Charley Young, one-fifth interest.
Averring that said property is not susceptible of division in kind, plaintiff prays for a partition of same by licitation.
The defendant Joseph A. Básele alleges in his answer to the demand for partition that he is the Sole owner of the property described in plaintiff’s petition, and that plaintiff has no interest in or title to this property, and therefore has no right to demand a partition of same.
The title of the defendant Joseph A. Básele to the whole of the property in controversy is based upon a notarial act of sale to said defendant from Abel J. Básele, of date March 24, 1892, and duly recorded in the parish of Terrebonne.
The title of plaintiff to an undivided one-fifth interest in said property is founded upon an authentic act of sale to him from Mrs. Onea Básele, the wife of Marvel Aucoin, of her undivided one-fifth intex’est iix the property ixx dispute. This act of sale is of date October 20, 1919, and it is recited therein that this is the same property acquired “by vendees herein from the succession, of her late mother-, Lucy Birdsell Básele, deceas *1029 ed, she being one of five children and legal representatives of said Lucy Birdsell Básele.”
Abel J. Rascle and Lucy Birdsell, both deceased, were the father and mother of defendants. Five children Were born of this union: Joseph Básele, Frank Básele, Ira Básele, Mrs. Onea Básele Aucoin, and Mrs. Iola Básele Young.
The question whether .or not Mrs. Lucy Birdsell Básele, the mother of defendants, owned prior to her death the property sought to be partitioned herein depends upon the fact whether a certain counter letter purported to have been signed by Joseph Básele, the record owner of the whole of'said property, was in fact signed by him, as said counter letter acknowledges Mrs. Lucy Birdsell to be the sole owner of said property.
In other words, the title of Mrs.' Onea Básele, the author of plaintiff’s title is predicated upon the ownership of this property by the succession of her mother, by virtue of said counter letter, an instrument under private signature. This counter letter was not produced by plaintiff on the trial of the case. It was exhibited, however, to Allen J. Ellender, one of the counsel for plaintiff, by the defendant, Frank Básele, prior to recordation. On January 2G, 191S, the counter letter was delivered by Básele to the clerk of the court of Terrebonne parish, and, after being recorded, was mailed by the clerk to the mother of defendants, and has not been located since, according to the testimony of this witness. The defendant Frank Básele testifies that the signature to the counter letter seemed like the signature of his brother, but that he does not know whether his brother1 signed the instrument, and could not swear to it; and that he does not know if he could recognize the signature of his brother Joseph iff he saw it.
The defendant Joseph Básele swears positively that he did not affix his signature to this counter letter, and had never seen or had same in his possession at any time. An attempt was made to prove the execution of this counter letter by the testimony of Allen J. Ellender, counsel for plaintiff, stating that he had compared the signature of Joseph Básele to the counter letter with several signatures of said defendant to notarial acts deposited in the clerk’s office, prior to the recordation of said counter letter by the clerk, and that the signature to the counter letter was similar to the signatures of Joseph Básele to these public acts.
This testimony was objected to and excluded by the trial judge, as plaintiff’s witness did not qualify himself as an expert in the comparison of handwriting.
This objection was made when plaintiff’s witness testified during the presentation of plaintiff’s testimony and at the conclusion of defendants’ testimony, when plaintiff’s witness again took the stand and was examined by the trial judge. Upon neither of these occasions did plaintiff’s witness qualify as an expert.
Plaintiff’s witness did not pretend that he was- familiar with the signature of Joseph Básele from having frequently seen him write or sign his name.
Article 325 of the Code of Practice provides:
“If the defendant deny his signature in his answer, or contend that the- same has been counterfeited, the plaintiff must prove the genuineness of such signature, either by witnesses who have seen the defendant sign the act, or who declare that they know it to be his signature, because they have frequently seen him write and sign his name.
“But the proof by witnesses shall not exclude the proof by experts or by a comparison of the writing, as established by the Civil Code.”
Plaintiff’s witness failed to qualify either as a witness to the counter letter, or because *1032 of knowledge of Joseph Bascle’s signature, or as an expert.
Now as to “a comparison of the writing”:
“Comparison * * * is made in two ways: By comparing with the exemplar formed in the mind by previous knowledge, or With other writings produced on the occasion, and proven or admitted to be genuine.” Succession of MeDonogh, 18 LaJ Ann. 445.
[1] No writings of any kind by Joseph Básele were offered in evidence and proven and admitted to be genuine. The counter letter was not presented at the trial, it was therefore impossible in this case to prove the handwriting by comparison. Testimony as to the comparison of the signature affixed to the counter letter with the signature of Joseph Básele affixed to certain public acts on file in the clerk’s office was inadmissible, as it was ex parte, and not done in open court. It would not be possible for the trial judge under such circumstances to determine what weight should be given to such testimony. As was said by this court in the ease of Huddleston v. Coyle, 21 La. Ann. 148:
“The testimony of witnesses who never saw the defendant write or sign his name, and who express their- belief in its genuineness merely because it resembles other signatures which they presumed to be his, would not satisfy the requirements of the law. Robinson v. Honet, 15 La. 262.”
[2] A bill of exceptions was reserved to.the exclusion' of a copy of the recorded counter letter when offered in evidence. The ruling was correct.
Even if otherwise admissible, “the registry of [a private] act does not make proof of its execution by the parties.” Succession of Henry Grant, 14 La. Ann. 795.
“The copy of an act under private signature does not prove the genuineness of the original, although admitted to record on the affidavit of a subscribing witness.” Reynolds v. Stille, 14 La. Ann. 599.
“Copies from the book of conveyance of' the clerk * * * are copies of' copies, and,. as such, not admissible in evidence.” Ruddock Orleans Cypress Co. v. Peyret, 113 La. 867, 37 South. 858.
Objections were also urged to the admissibility of secondary evidence to prove the execution of the counter letter by Joseph Básele, on the ground that it had not been proven, that it had been lost or destroyed, and could not be produced, and on the further ground of laches on the part of plaintiff in taking steps, prior to the trial, to produce said counter letter on the hearing of this case.
[3] The loss of the alleged counter letter has not been proven, in our opinion, with reasonable legal certainty. Plaintiff did not exercise, before the trial, due diligence in attempting .to produce the original counter letter in this case. Plaintiff was evidently aware that his title depended upon this counter letter. The answer, of Joseph Básele was filed December 19, 1919, and the trial of this case was not taken up until February 26, 1920. The defendant, Frank Básele, testified that his search for the counter letter had not been thorough, but had been confined to the investigation of the contents of his mother’s armoir, where she kept some of her papers; and he adds that she kept other papers “in the trunk and every which way,” places which were not examined by this witness at all.
The clerk of the court is dead, and defendant Frank Básele testifies that he has not seen the counter letter in the possession of his mother since its return to her by that officer, and did not know where it was kept by her. We find no effort to discover this counter letter, except by cross-examination of Frank Básele, one of the defendants in the ease.- It is obvious that the private papers of the deceased mother of defendants had not been thoroughly examined before the trial, by any one in a diligent effort to produce the original counter letter at the hearing of the case.
*1034 The demand of plaintiff was therefore properly rejected by the lower court.
The judgment appealed from is affirmed at the cost of appellant.
Rehearing refused by the WHOLE COURT.